UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

TRICIA ANN CAMPBELL,

Debtor.
_____/

Case No.: 11-54489-swr
Chapter 13
Hon. Steven Rhodes
Hon. Walter Shapero (Presiding)

## **PRELIMINARY OPINION ON CONFIRMATION**

This Court held a confirmation hearing in this Chapter 13 case in the absence of Judge Rhodes.

This case was filed on May 20, 2011. Debtor apparently lives with her parents, and her filed Schedules I and J show income from baby-sitting at $750.00 per month ($9,000.00 per year), and monthly expenses totaling $610.00 consisting solely of $50.00 for food, $45.00 for medical and dental expenses, $250.00 per month for transportation expenses, and $265.00 per month for auto installment payments. No vehicle is listed on either the originally filed Schedule B or the two Amended Schedules B thereafter filed, nor on any filed Schedule G. There are no scheduled secured or priority creditors, and Schedule F unsecured creditors total $51,509.72, some $16,000.00 of which is student loan debt. The statement of financial affairs income history shows (a) $2,600.00 from baby sitting as her only income for the almost five months in 2011 before filing; (b) 2010 total income of $7,165.00, consisting of $5,865.00 from Campbell Family, LLC and $1,300.00 from Bella Rosie Boutique; and, (c) 2009 total incomeof $1,670.00 from the Bella Rosie Boutique.

In answer to Question 13 on personal property, Schedule B filed June 10, 2011, Debtor listed "D&K General Contracting" - 1270 Shares, with a value of $13,000.00; and she exempted that asset on Schedule C.

1

Debtor amended Schedules B and C on August 3, 2011. As to the D&K items, the Amended Schedule B states:

> D&K General Contracting-1270 Shares (3.9% of Shares)
> Note: D & K General Contracting owns a single asset property located at D102 E Tunis Road, Watton, MI 49970. Land is worth approximately $500,000.00, however, D&K has outstanding liabilities to third parties or exceeding $500,000.00 Market value = 0.00 value 0.00

That Amended Schedule also newly listed "43% Shareholder in Campbell Family Trust." Market Value is negative value 0.00. Amended Schedule C exempted only the D&K property.

On August 30, 2011, Schedule B was again amended reiterating what was stated as to D&K in the prior Amended Schedule B, deleting any reference to the previously referred to Campbell Family Trust 43% shareholder interest; and, newly adding "49% Shareholder in Campbell Family Associates LLC." MV is negative value 0.00."

Debtor's modified Plan filed August 8, 2008, proposes plan payments of $140.00 per month for 36 months, provides for $1,200.00 to be paid to the unsecured creditor class, and provides for $3,600.00 to be paid in Debtor's attorney fees. The Trustee filed objections to the Plan questioning feasibility under § 1325(a)(6), seeking documentation as to D&K Contracting and Campbell Family Associates and objecting to their indicated zero values; (thus, implicating 1325(a)(4)); and, objecting to treatment of the unsecured creditors.

The initial confirmation hearing held on September 14, 2011 before Judge Rhodes, was adjourned to October 5, 2011, when it was heard by this Court. At the September 14, 2011, hearing, it appeared that the Trustee had previously been supplied with requested tax returns and other documentation relating to the referred to assets on the basis of which the Trustee stated she saw a value of some $47,000.00 - a value obviously at odds with Debtor's asserted zero value. In answer

2

to the Court's question of why the case was filed under Chapter 13 rather than Chapter 7, the Debtor said it was on advice of her attorney. Her attorney indicated it was also because of some concern about what might happen in a Chapter 7 case in respect to the Debtor's scheduled minority stock interest, there being apparently concern over how Chapter 7 case administration might (negatively) affect the majority interest which was held by Debtor's father or some other family members or interests. The result of that hearing was an adjournment of confirmation to October 5, 2011.

The October 5 hearing focused on the questions of the valuation of the scheduled property interests in light of the requirements of §1325(a)(4) and the rationale for the Chapter 13 filing as opposed to a Chapter 7 filing. As a result, it was agreed that Debtor would submit to the Court documentation it had previously submitted to the Trustee in support of its position that the objected to values were indeed zero.

The documents actually submitted post hearing related only to the settlement of certain lawsuits involving the Gorno Land Co., LLC ("Gorno, LLC"), in which Kevin Campbell (possibly the father of the Debtor?) was a 25% owner, and a Dale Lentz was also a 25% owner. The other 50% owner was "The Gorno Trust." The Gorno, LLC was in the business of developing a condominium project and the Gorno Trust had brought a state court action alleging breach of trust, etc., by the other owners, and, the condominium association also brought an action involving the same parties. Apparently, at some point, the 25% interest of Kevin Campbell was conveyed to Campbell Family Associates, LLC. The submitted documents indicate the lawsuits were to be settled by way of the redemption by Gorno, LLC of the Gorno Trust interests, in return for cash payments by third parties and conveyance to it of the remaining unsold condominium units and execution of broad releases of Campbell Family Associates, LLC , et. al. As of the October 5, 2011,

3

hearing, apparently it had not yet been consummated. If it were, or has now been consummated, it would appear that Gorno, LLC, would still at least nominally exist and because of its redemption of The Gorno Trust interest, it would have then been owned half by Lentz and half by Campbell Family Associates, LLC, the post redemption remaining owners.

The said documents filed post hearing (1) do not include any of the other documents that previously had also been supplied to the Trustee and upon which the Trustee made reference on September 14, 2011, and (2) do not themselves indicate any financial information as to what were the assets and liabilities, if any, Gorno, LLC, after consummation of the contemplated settlement. One possible inference might be that there were no remaining assets, or that if there were any, they were exceeded by its liabilities; (if that were so, then the value of Debtor's stated 49% interest in Campbell Family Associates, LLC, might indeed be zero). That assumes, however, among other things that its interest in Gorno, LLC, was the only asset of Campbell Family Associates, LLC - evidence of which is also lacking. If the settlement has not been consummated or will not be, then it is not clear what the situation will be.

As to an issue relating to the value of Debtor's stated share interest in D&K General Contracting, there is no evidence presently before the Court to support the noted schedule statement as to value set forth in the first Amended Schedule B. However, if the Trustee is or has become satisfied that there is no value there, so be it. If not, then evidence is required, and the burden of production is on the Debtor.

Finally, as noted in the first Amended Schedule B, there is reference to a "43% Shareholder interest in Campbell Family Trust." While the use of the term "Shareholder" to describe an interest in a Trust is an anomaly, that Schedule does raise the question (despite, or because, of the fact that

4

the listed percentage interest varies from the percentage interest stated with reference to the Campbell Family Associates, LLC, interest) of whether the latter indicated LLC and the Trust interests were really one and the same, but initially mistakenly separately referred to, or, whether in fact they represent two different personal property interests held by the Debtor.

The foregoing facts and the requirements of § 1325(a)(4) among others, clearly require an evidentiary hearing incident to confirmation to specifically address among the other indicated questions (a) who, other than the Debtor, are the shareholders, members, beneficiaries, and/or parties in interest of each of Campbell Family Associates, LLC, Campbell Family Trust, and, D&K General Contracting; and, are their interests, rather than those of Debtor, dictating the form of Debtor's bankruptcy, and if so, is that appropriate?; (b) the feasibility of a plan that proposes a monthly plan payment of $140.00 per month, premised solely on $750.00 monthly from baby sitting income, when in the five months prior to filing, Debtor's average monthly baby sitting income was some $520.00, and in the two calendar years previous to filing, her baby sitting income was zero; (c) the circumstances surrounding Debtor's indicated automobile and transportation expenses in light of the lack of any scheduled interest in a vehicle; (d) the financial status of Gorno, LLC, after (and if) the indicated settlement was consummated, and incident thereto, the value of the Debtor's asserted interest in the remaining 50% member (Campbell Family Associates, LLC) of Gorno, LLC, including the financial status of Cambell Family Associates, LLC; as that status may be affected or reflected in any governing documents relating to either of said entities; (e) separate and apart from any other asset, whether or not Debtor has the indicated interest, (once asserted in a filed Schedule B), in the "Campbell Family Trust," and if so, what are the terms and conditions of that trust and its financial picture; and, (f) identification of assets, liabilities, and financial condition of D&K General

Contracting, and the terms and conditions of its governing documents, as such might affect the value of Debtor's interest in said entity, particularly in light of the fact that Debtor initially valued that interest at $13,000.00. It is possible the answers to any or all of these questions might be resolved in favor of confirmation of Debtor's plan, however, absent satisfaction of Trustee's objections, without such only a properly conducted evidentiary hearing can ferret out the relevant facts and the answers to the indicated questions and those raised by the Trustee - all or many of which can affect confirmation.

Accordingly, the parties shall contact the Trustee and the appropriate Courtroom Deputy to set and conduct an evidentiary hearing before Judge Rhodes in light of this Opinion.

**Signed on January 19, 2012**

                                        /s/ Walter Shapero
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**